UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
WESTERN DIVISION - LOS ANGELES

UNITED STATES OF AMERICA,  )  Case No. CR 19-00117
                           )
     Plaintiff,            )  Los Angeles, California
                           )  Friday, August 9, 2019
          v.               )  3:02 P.M. to 3:21 P.M.
                           )
EDGARD VELASQUEZ,          )
                           )
     Defendant.            )
_____)

TRANSCRIPT OF PROCEEDINGS
BEFORE THE HONORABLE ALKA SAGAR,
UNITED STATES MAGISTRATE JUDGE.

Appearances:              See Page 2

Deputy Clerk:             Alma Felix

Court Reporter:           Recorded; CourtSmart

Transcription Service:    JAMS Certified Transcription
                          16000 Ventura Boulevard #1010
                          Encino, California  91436
                          (661) 609-4528

Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

APPEARANCES:

For the Plaintiff:       The United States Attorney's Office
                         Central District of California
                         Violent and Organized Crime Section
                         By:  JOANNA M. CURTIS
                         312 North Spring Street, 13th Floor
                         Los Angeles, California  90012
                         (213) 894-0298
                         joanna.curtis@usdoj.gov


For the Defendant:       Law Office of Kenneth M. Miller
                         By:  KENNETH M. MILLER
                         107 Avenida Miramar, Suite C
                         San Clemente, California  92672
                         (949) 388-3440
                         ken@kmmillerlaw.com


Also appearing:          Eleazar Carrasco
                         Spanish Language Interpreter

LOS ANGELES, CALIFORNIA, FRIDAY, AUGUST 9, 2019, 3:02 P.M.

(NO READING OF STATEMENT OF RIGHTS AVAILABLE)

(Call to Order of the Court.)

THE CLERK:  Calling case No. 19 CR-00117, *United States of America v. Edgard Velasquez.*

Counsel, please state your appearances for the record.

JOANNA CURTIS:  Good afternoon, Your Honor. Joanna Curtis on behalf of the United States.

THE COURT:  Good afternoon.

KENNETH M. MILLER:  And good afternoon, Your Honor. Ken Miller on behalf of Mr. Edgard Velasquez.  He is present, and he seeks the appointment of counsel, and he's being assisted by a Spanish interpreter.

THE COURT:  Okay.  Good afternoon.

Is Edward -- Edgard Velasquez your true name?

THE DEFENDANT:  Yes.

THE COURT:  And do you understand the translation that is being provided by the Spanish language interpreter?

THE DEFENDANT:  Yes.

THE COURT:  And if at any time you don't understand what is being stated to you, can you please let me know?

THE DEFENDANT:  That's fine.

THE COURT:  Did the Spanish language interpreter read to you a statement of your constitutional and statutory

rights in these proceedings?

THE DEFENDANT:  Yes.

THE COURT:  Did you understand your rights?

THE DEFENDANT:  Yes.

THE COURT:  Did you sign a statement indicating that you understand your rights?

THE DEFENDANT:  Yes.

THE COURT:  Would you like me to read these rights to you here in open court at this time?

THE DEFENDANT:  No.

THE COURT:  I have a financial affidavit in support of a request for the appointment of counsel.  Did you sign this form?

THE DEFENDANT:  Yes.

THE COURT:  And are the statements on this form true and correct?

THE DEFENDANT:  Yes.

THE COURT:  All right.  The Court finds that the defendant is entitled to the appointment of counsel, and the Court appoints Mr. Miller from the indigent defense panel to represent the defendant in this case.

MR. MILLER:  Thank you, Your Honor, and I'd request that the affidavit be filed under seal.

THE COURT:  The financial affidavit?

MR. MILLER:  Financial affidavit, please.

THE COURT:  That request is granted.

MR. MILLER:  Thank you.

THE COURT:  Mr. Velasquez, have you received and reviewed the indictment that has been filed against you in this case -- let me rephrase that -- the Second-Superseding Indictment that has been filed in this case?

THE DEFENDANT:  Yes.

THE COURT:  And without admitting or denying the allegations in the Indictment, do you understand what it is you're being charged with?

THE DEFENDANT:  Yes.

THE COURT:  The Court has received and reviewed the Government's request for detention which -- the Government's request for detention and the Pretrial Services Report and its recommendation of detention, and I also note that the Government provided the Court with what's called an "indictment cheat sheet," which highlights those overt acts that involve this defendant in this very lengthy Second-Superseding Indictment and has also provided the Court with a copy of -- a redacted copy of the search warrant application that was filed on July 12, 2019.

And, Mr. Miller, have you also been provided with those documents?

MR. MILLER:  I have, Your Honor.

THE COURT:  All right.  So the Court has reviewed

those records, appreciates the condensed summary of the Indictment that was provided, and the Court has reviewed the Pretrial Services Report that was issued today's date as well as the report that was issued on July 15, 2019, at the time of the defendant's initial appearance in the Western District of Oklahoma.

All right.  Mr. Miller, how would you like to proceed?

MR. MILLER:  I'm prepared to argue now, Your Honor.

THE COURT:  All right.  Let me hear from you.

MR. MILLER:  Your Honor, I would recommend a bond of $10,000 with deeding on the property owned by my client's sister and mother, and a $10,000 appearance bond signed by his girlfriend, and electric monitoring.

And I think it's important to point out that Mr. Velasquez has absolutely no prior criminal convictions. There's a couple little DMV issues but no prior criminal history.  He's got a really good employment history.  He's got a Class A commercial license.  He has extremely strong contacts in Southern California -- his mother, his sister, his four kids, and his kids are getting ready to start school.  We've already proffered bail resources.

And while this is a really serious Indictment, there's a couple things about it that I think are notable. One is he's not named in a single substantive count; and,

number two, I believe that the Government is seeking the death penalty against codefendants, which means this case is going to be going for a long, long time, and so to hold Mr. Velasquez without bail is going to be tantamount almost to a conviction without -- for a man who doesn't have any prior convictions and who has a really good history.

So, I mean, he's here in this country legally, he's working hard, and I understand that the Government has a case, but they shouldn't put the cart before the horse and incarcerate the man until they prove it.

And with that, I'll --

THE COURT:  All right.  What about his prior failures to appear before the -- for DMV violations, and there's a current failure to appear as well.  Do you want to address those?

MR. MILLER:  No, Your Honor, other than to point out that they are different from a criminal -- than failing to appear in a criminal case, particularly when bond is posted and family members have put up real money.

THE COURT:  Well, one could also say that if you don't appear for something not as serious as a federal criminal case, then what credibility do you -- does the Court believe that the defendant has in promising to appear in a federal criminal case?

There's also, in the Pretrial Services Report, an

indication that there will be a mandatory suspension or revocation effective August 21, 2019, and that there are prior vehicle violations.  So I'll just note that.

All right.  Ms. Curtis, let me hear from you.

MS. CURTIS:  In addition to all of the documents that the Court has reviewed, I wanted to point out -- well, first I'll say it is true that 16 defendants are capital eligible, but Mr. Miller's statement that the Government is seeking the death penalty as to those 16 is obviously premature and inaccurate.

With respect to flight risk, Your Honor, there's a couple of things.  In the search warrant affidavit, paragraph 31, on or about June 28, 2019, Mr. Velasquez, via Facebook, checked in to a location in Juarez, Mexico.  My understanding of "checking in" is you can't just check in somewhere if you're not actually there.  When you're on your phone, the location where you are -- the geolocation pulls up where you are, and Mr. Velasquez was, in fact, in Juarez, Mexico, according to Facebook records.

The interesting thing about that crossing is that there was no crossing record back into the United States.  I don't know how he got back in.  I don't know if he has connections or ties, and, of course, that travel was not noted or recorded or reported to Pretrial Services.

Another sort of inconsistency is the defendant told

Pretrial Services that he resides at the address listed on the face page of the search warrant and has lived there -- I want to say he said since 1999. When we went to execute that search warrant on July 13 at 6:00 o'clock in the morning, we had this house surrounded, as well as the girlfriend's house surrounded. We had a GPS warrant for Mr. Velasquez's phone, which was pinging at the address on the face sheet of the warrant. We believed he was there. We were going to arrest him and search the house.

THE COURT: Which address is that?

MS. CURTIS: The 8501 and 8503 Ventura Canyon Avenue. It's two houses located on a property surrounded by a fence.

When we got inside the residence, it's true that Mr. Velasquez's family was there -- mother, I want to say an aunt, and some -- maybe some nieces and nephews -- something like that. They all reported that the defendant did not live at that residence, hadn't lived there for years, and, in fact, resided with his girlfriend at some other location that they didn't know. That actually proved to be true because, when the agents did go ahead with the search warrant, they didn't find any documents or anything in the house to lead them to believe that what the family said was untrue.

So I think the defendant goes to that residence, he may even own it, certainly, all of the -- when we look at the

records for that residence, they do show up in his name, but he didn't live there, and so there's certainly an inconsistency between what he told Pretrial Services today about his residence and what his family said was his residence on July 13 when we executed the search warrant.

As far as his gang ties, he does admit that at some time he used to be an MS-13 member.  I don't know what the defendant means by that, but certainly, based on the warrant, it's recent, and as recent as July 1, 2018 -- that's paragraph 27 of the affidavit -- the defendant admitted to law enforcement that he was an MS-13 member from the Fulton clique.

I think the allegations against the defendant are serious, and there's -- he's in possession of large cash.  That's Overt Act No. 1.  There's Overt Acts 2 and 3.  That's a murder that we have reopened and are currently looking into, where the defendant ordered a co-conspirator to, quote, "shoot this fool," killing a victim named "BR."

The defendant, in September of 2015, was at a MS-13 leadership meeting that was recorded.  It was the shot-callers of MS-13 in Los Angeles, and the defendant was there representing his clique.

I think perhaps even more disturbing is that some of the defendants -- codefendants are charged with a murder of a victim called "JS" on March 6, 2017.  On the night of

the murder, the defendant was in telephonic contact with two of the participants of that murder, including Angel Guzman, who is alleged to have carved out that victim's heart. After the murder, the defendant hosted a group of MS-13 members, including some participants of that murder, as alleged in Overt Act 35 -- 34 and 35, where the members who participated in the murder had to show photographic evidence of the victim's body to prove to this defendant that they, in fact, carried out that murder.

I think the bond that Mr. Miller proposed is -- to say "wholly insufficient" is probably an understatement given the danger to the community that this defendant poses, given the inaccuracies that he reported about his residence and his travel, and the fact that he does travel to Mexico and El Salvador, I think he is a flight risk.

And with that, I'll submit.

THE COURT: All right. Mr. Miller, do you want to respond to any of those statements?

MR. MILLER: I do, Your Honor.

THE COURT: Go ahead.

MR. MILLER: I don't think the fact that the Government can't track whether or not he came back in from Juarez should be held against him. There could be a number of reasons for that. It's assuming an absolutely perfect system on the Government's side, and I just don't think

that's -- that should be assumed.

I think the inconsistencies --

THE COURT:  Well, what about the fact that he didn't report that travel to Pretrial Services?

MR. MILLER:  I don't -- Your Honor, I'm not clear on that because he has been in the custody in Oklahoma since his arrest.  So I don't believe that he was ever supposed to report that travel to Pretrial Services.  He hasn't -- this is his first arrest, and he hasn't been out since he was arrested so --

THE COURT:  Well, the -- he didn't interview with Pretrial Services when he made his initial appearance in the Western District of Oklahoma, but he did provide information to Pretrial Services before today's appearance here, and with respect to foreign travel, he said that he last traveled to El Salvador in 2016 and he also traveled to Mexico in 2014 and 2015 and did not report any other foreign travel.  So there is this information that the Government has that he was in Mexico recently, and whether or not they can track him coming back, I think, the more critical element for the Court is that he didn't report that so --

MR. MILLER:  I appreciate that, Your Honor.

THE COURT:  Yeah.

MR. MILLER:  And to that, I would say that I'm not convinced that a Facebook -- Facebook app would actually

track where anybody's going, but I'm not an expert, and I would not know that.

THE COURT:  Okay.

MR. MILLER:  The inconsistencies concerning a residence could be addressed by electronic monitoring and requiring that he stay at a particular place.

The -- and then going through the facts of what's in the Indictment, that's what the trial is going to be about.  I understand those are the Government's allegations, but they're just allegations.

And on that, I would submit.

THE COURT:  All right.

All right.  Well, I think, initially, the Court is concerned about the seriousness of the allegations in this Indictment and with the defendant's alleged role in the offenses that are detailed in the Indictment, which include more than one murder.

And the Court is also concerned about the defendant's lack of candor with Pretrial Services, not only as to his very recent travel to Mexico but also as to his gang membership, which, according to the Indictment, appears to be fairly well established, and yet the defendant claimed that he had left the gang sometime in 2005.

And then the defendant also has been -- has not been forthcoming about his residence.

And the Court does also take into account the fact that this defendant has had failures to appear with the Department of Motor Vehicles and can't help believing that, if someone can't even appear for a traffic violation, that there is little likelihood that the Court would have any assurance that they would appear for a very serious criminal offense.

And the Court does not believe that in this case, given the allegations, given this defendant's history, electronic monitoring would alleviate the risk of both flight and danger.

And finally, the proposed bond is, as Ms. Curtis pointed out, insufficient to assure against flight and/or danger in this case.

So for those reasons, the defendant is remanded to the custody of the U.S. Marshal -- that is without prejudice -- pending further proceedings in this matter.

Since this is the defendant's initial appearance on the Second-Superseding Indictment, we'll proceed now with the post-indictment arraignment.

THE CLERK: Is Edgard Velasquez your true name?

THE DEFENDANT: Yes.

THE CLERK: Did you read and understand the statements of this Court pertaining to your rights and the appointment of counsel?

THE DEFENDANT:  Yes.

THE CLERK:  Has a statement of rights been read to you in Spanish?

THE DEFENDANT:  Yes.

THE CLERK:  Did you see and sign a statement of your rights?

THE DEFENDANT:  Yes.

THE CLERK:  Did you receive a copy of the Second-Superseding Indictment?

THE DEFENDANT:  Yes.

THE CLERK:  Do you understand the substance of the charges pending against you?

THE DEFENDANT:  Yes.

THE CLERK:  Mr. Velasquez, how do you plead to the charges contained in the Second-Superseding Indictment?

THE DEFENDANT:  Not guilty.

THE CLERK:  Thank you.

THE COURT:  All right.  This case is assigned to Judge Otis Wright.  Jury trial is set for October 1, 2019, at 9:00 a.m.  Judge Wright is located in Courtroom 5D, which is on the Fifth Floor of the First Street Courthouse.

Anything further?

MR. MILLER:  No, Your Honor.

MS. CURTIS:  Thank you, Your Honor.

(Proceedings adjourned at 3:21 p.m.)

CERTIFICATE

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.


/s/ Julie Messa_                    August 20, 2019
Julie Messa, CET**D-403             Date
Transcriber